UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CRIMINAL ACTION NO. 04-10110-RWZ


**UNITED STATES OF AMERICA**

**v.**

**JAMES BOGARTY**
**a/k/a "Chuck"**


**MEMORANDUM AND ORDER ON GOVERNMENT'S**
**MOTION FOR DETENTION**


**AUGUST 7, 2004**


**BOWLER, Ch.U.S.M.J.**

On or about April 15, 2004, defendant James Bogarty, a/k/a

"Chuck," (the "defendant"), was arrested pursuant to a six count

Indictment returned in this district on April 8, 2004. The

Indictment charges the defendant and codefendant Gerald Anderson

(codefendant "Anderson"). The defendant is named in counts one,

two, three, five and six of the Indictment. Counts one and three

charge the defendant with distribution of cocaine base in

violation of Title 21, United States Code, Section 841(a)(1),

distribution within a school zone in violation of Title 21,

United States Code, Section 860(a) and aiding and abetting in violation of Title 18, United States Code, Section 2. Count Two charges the defendant with distribution of cocaine base in violation of Title 21, United States Code, Section 841(a)(1), distribution within a playground zone in violation of Title 21, United States Code, Section 860(a) and aiding and abetting in violation of Title 18, United States Code, Section 2. Count Six charges the defendant with distribution of cocaine base in violation of Title 21, United States Code, Section 841(a)(1) and aiding and abetting in violation of Title 18, United States Code, Section 2.

The defendant had his initial appearance before this court on April 15, 2004. He was represented by court appointed counsel. The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant. 18 U.S.C. §§ 3142 (f)(1)(C), (f)(1)(D) and (f)(2)(A). By agreement of counsel a detention hearing was scheduled before this court on April 27, 2004.

On that date this court conducted a detention hearing. The government called one witness and the defendant did not call any witnesses. At the conclusion of the detention hearing the defendant entered into a period of voluntary detention without

2

prejudice.

At a status conference on June 25, 2004, defense counsel moved to reopen the issue of detention. A hearing was scheduled for July 1, 2004. On that date this court heard additional argument. At the conclusion of the hearing this court took the issue of detention under advisement.

<u>DISCUSSION</u>

I.   A.  Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f). <u>See</u> 18 U.S.C. § 3142(a).

Under 18 U.S.C. § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . .;" (2) by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no

condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[1]  This determination is made by the court at the conclusion of a detention hearing.

B.  The government is entitled to move for detention in a case that:

(1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[2]

(2)  involves an offense punishable by death or life

---

[1] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .."  (Latter emphasis added.)  By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--applied.  That is precisely the holding in the Second Circuit.  <u>See</u> <u>e.g.</u>, <u>United States v. Jackson</u>, 823 F.D 4, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986), <u>cert</u>. <u>dismissed</u>, 107 S.Ct. 562 (1986); <u>see also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792 (1st Cir. 1991).

[2] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
> (A)  an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

imprisonment;

(3)   involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[3] or

(4)   involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua</u> <u>sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses.  <u>See</u> 18 U.S.C. § 3142(f).


C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime

---

[3] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  <u>See</u> <u>United States v. Moss</u>, 887 F.2d 333, 336-7 (1st Cir. 1989).

of violence or involves a narcotic drug;

(2) the weight of the evidence against the accused;

(3) the history and characteristics of the person, including--

> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).


D.  The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced.  The government must satisfy its position with respect to risk of flight by a preponderance of the evidence and with respect to dangerousness by clear and

6

convincing evidence.  See supra footnote 3.  This court must then weigh all relevant factors [set forth under § 3142(g)] and determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors.  United States v. Patriarca, 948 F.2d 789, 794 (1st Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence.  Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.  The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....  The Committee

> also <u>emphasizes</u> that the risk that a
> defendant will <u>continue to engage</u> in
> drug trafficking constitutes a danger to
> the "safety of any other person or the
> community."

<u>Id</u>. (Emphasis added; footnotes omitted); <u>see</u> <u>United States v.</u>
<u>Patriarca</u>, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to

community does not refer only to risk of physical violence); <u>see</u>

<u>also</u> <u>United States v. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990)

(stating danger in context of 18 U.S.C. § 3142(g) not meant to

refer only to physical violence); <u>United States v. Hawkins</u>, 617

F.2d 59 (5th Cir.), <u>cert.</u> <u>denied</u>, 449 U.S. 962 (1980)

(trafficking in controlled substances).[4]

The issue critical to determining whether to detain a

defendant is therefore, whether, with respect to the defendant,

based on the guidelines set forth <u>supra</u> in part C of this Order,

any condition or combination of conditions of release exist that

will reasonably assure the safety of any person and the community

and the presence of the defendant.  18 U.S.C. § 3142(e).


E.  "Where, as here, a defendant is charged with a

controlled substance offense punishable by a maximum term of 10

years or more, the government is aided by § 3142(e)'s rebuttable

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the
community, however, only if the judicial officer determines that a detention hearing is
appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(l), and the judicial officer
has determined that a hearing is appropriate under that latter section.  <u>See</u> <u>United States v. Ploof</u>,
851 F.2d 7 (1st Cir. 1988).

flight presumption."[5]  <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  The presumption is not limited to risk of flight.  Rather, the presumption has two components.  One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community."  <u>United States v. Moss</u>, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony.  18 U.S.C. § 3142(e).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and

---

[5] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries.  <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  Consequently, imposing "a large bond is often ineffective in deterring flight."  <u>United States v. Perez-Franco</u>, 839 F.2d 867, 869-70 (1st Cir. 1988).

the other factors set forth under § 3142(g).  The defendant,
however, "bears only the burden of production."  United States v.
Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988).  As explained by
the United States Court of Appeals with regard to the statutory
presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of
> production on a defendant.  The burden of persuasion
> remains with the government.  Nevertheless, even after
> a defendant has introduced some evidence to rebut the
> flight presumption, the presumption does not disappear,
> but retains evidentiary weight--the amount depending on
> how closely defendant's case resembles the congressional
> paradigm, Jessup, 757 F.2d at 387--to be considered along
> with other factors.

United States v. Palmer-Contreras, 835 F.2d at 17-18; see also
United States v. Perez-Franco, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is
triggered by the statutory penalty prescribed irrespective of the
actual or likely sentence imposed upon the particular defendant.
See United States v. Moss, 887 F.2d 333, 337 (1st Cir. 1989) (per
curiam).  The fact that a defendant may receive a sentence of
less than ten years does not make the presumption inapplicable.
Id. at 337.  Rather, this court may consider such a factor with
regard to the weight this court gives to the presumption.  Id. At
337.

II.  The defendant, James Bogarty, is 34 years of age.  He was

10

born in Boston on June 27, 1970.[6]  He graduated from East Boston High School in 1989.

The defendant's mother lives in Dorchester.  The defendant does not know the whereabouts of his father.  The defendant has a half brother living in Boston.

The defendant is single and has two children, ages 11 and 15, from two different relationships.  The 15 year old lives with his mother, Felicia Nettles, in Boston, although the defendant does not know where.  The 11 year old lives with her mother, Deborah Belim, in Roxbury.

At the time of his arrest the defendant was living, rent free, with his girlfriend, Kimberly Herndon[7] ("Ms. Herndon"), at her home in Roxbury.  Ms. Herndon's two children from two previous relationships also reside with her.  The Pretrial Services report notes that although the defendant has only been dating Ms. Herndon for two months, he has known her for most of his life.

At the request of defense counsel Ms. Herndon was interviewed by Pretrial Services as a potential third party custodian.  Ms. Herndon is 36 years old, a graduate of

---

[6]  It should be noted that although the defendant states that his date of birth is June 27, 1970, his criminal history reflects a date of birth of June 22, 1970.

[7]  The first Pretrial Services report refers to the surname of defendant's girlfriend as "Hernon." The second Pretrial Services report and all of the defendant's filings refer to her name as "Herndon."  Therefore, this court will use the name Herndon to be consistent.

Charlestown High School and attended two years of college.  She
is a lifelong resident of Massachusetts and has been living at
her present address in Roxbury for four years.  She owns her home
which she values at $205,000, with an outstanding mortgage of
$60,000.  For the past seven years she has been employed by the
City of Boston as a 911 operator.  The Pretrial Services report
notes that while Ms. Herndon is an acceptable candidate for a
third party custodian, it is the position of Pretrial Services
that the defendant should not be released for the reasons set
forth in the Pretrial Services report.

Prior to living with Ms. Herndon, the defendant was living
with various friends in Roxbury and Dorchester for four months.
Before living with various friends the defendant resided in a
residential drug treatment program for nine months.  Before
entering the drug treatment program the defendant lived with a
series of girlfriends.  The defendant lived with his mother for
the first 25 years of his life.

The defendant told Pretrial Services that he has been
supported by his mother, grandmother, aunt and various
girlfriends "off and on" throughout his life.  For one year (no
date given) he worked for Resource Options in Needham, where he
was involved in cleaning up hazardous waste.  Other than this job
his work history is minimal.  The defendant reports no assets.

By his own admission the defendant began using heroin at the

12

age of 22 and he has been using the drug "on and off" since that time.  When interviewed by Pretrial Services the defendant stated that he had not used heroin for two months but that prior to stopping he was using between 25 and 50 bags a day.  In 1998 he began using crack cocaine at the rate of $150 per day.  The defendant stated that he stopped using cocaine five months prior to being interviewed.  He has been through four detoxification programs and most recently a nine month inpatient drug treatment program.  The defendant told Pretrial Services that he interested in receiving more drug treatment.

The defendant has a long and serious criminal record.

He has convictions for possession with intent to distribute a Class D controlled substance (twice), conspiracy to violate the Controlled Substances Act, manufacturing a Class B controlled substance (twice), possession of a firearm, possession with intent to distribute a Class A controlled substance, conspiracy, larceny, knowingly receiving stolen property and uttering.

The defendant is currently on release from the Roxbury District Court and Suffolk Superior Court.  The Suffolk case is a drug charge dating from 2002.

The defendant's criminal history also reflects over 20 defaults, one probation violation and a civil restraining order, for a duration of one year, sought by the mother of one of the defendant's children.

III.  The relevant evidence at the detention hearing showed the following.

The government called Detective George MacLaughlin ("MacLaughlin") of the Milton Police Department.  He testified that he has been so employed for 33 years and that since 1995 he has been assigned to the Drug Enforcement Administration.  His principle responsibilities involve the investigation of narcotics cases.

MacLaughlin testified that the above-captioned charges arise from a joint investigation, involving city, state and federal law enforcement agencies, commenced in the spring of 2003 and resulting in the return of numerous state and federal indictments in April of 2004.  He noted that the investigation focused on the Warren Gardens area of Roxbury.

In further testimony MacLaughlin stated that the defendant was arrested as part of the culmination of the investigation. MacLaughlin identified an affidavit he authored in support of the government's motion for detention.  The affidavit was admitted as Government Exhibit # 1.  MacLaughlin directed the court's attention to tab one of the affidavit, which is a chart setting forth the details of the drug transactions with which the defendant is charged.

According to the chart, the defendant was involved in four separate drug transactions between July 31, 2003 and September

14

24, 2003.[8]  In all four instances the defendant sold crack cocaine to a member of the Boston Police Department operating in an undercover capacity.  The first three of the transactions were recorded on audio and/or videotape.  There was a recoding malfunction on the fourth transaction.  MacLaughlin explained how the recording and transmitting equipment functions.

MacLaughlin was shown a map of the Warren Gardens area of Roxbury, where the transactions occurred.  MacLaughlin explained that the map was a fair and accurate representation of the area with the exception of two streets, Warren and Rockland, which do not appear to intersect on the map as they should.  The map, which is shaded in several different colors, was admitted as Government Exhibit # 2.  MacLaughlin explained that different colors represent "buffer zones" which are located within 1,000 feet of a playground (areas colored pink on the map) or within a 1,000 feet of a school (areas colored blue on the map).

In further testimony MacLaughlin noted that the sales on July 31 and September 3, 2003, occurred in a pink zone and the sale on September 24, 2004, commenced in a pink zone and moved into a blue zone.

On cross examination it was established that MacLaughlin did not participate in the arrest of the defendant nor is he aware of any of the circumstances of the defendant's arrest or of where

---

[8]  The sales occurred on July 31, September 3, September 10 and September 24, 2003.

the defendant was residing at the time of his arrest.

This court notes that attached to the Memorandum in Support of the Defendant's Application for Bail to a Third Party Custodian (Docket Entry # 22) were four documents to be considered by this court.  Two documents, the first Pretrial Services report and the Pretrial Services report of the interview of Ms. Herndon have already been detailed in Section II above.

The two additional exhibits include a copy of a Suffolk Superior Court docket in <u>Commonwealth v. James Bogarty</u>, SUCR2002-10118 and the defendant's certificate of completion for Project Turnabout, dated October 25, 2002.

Defense counsel offered the Superior Court docket to show that the defendant has continually appeared in court as required since February 21, 2002.


IV.  The return of the Indictment in the United States District Court for the District of Massachusetts in this case establishes the existence of probable cause that the defendant committed the crimes for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C), (f)(1)(D) and (f)(2)(A).  The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community.  In contradistinction, the government must demonstrate

only by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear.  The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The government's case against the defendant is strong.  The defendant was involved in four transactions in which he sold crack cocaine to an undercover law enforcement agent.  Three of the transactions were recorded on audio and/or videotape.

Selling drugs is nothing new for the defendant.  His first drug conviction dates back to 1987.  His criminal record includes convictions for possession with intent to distribute Class D (1987), Class B (1990), Class D (1993), Class B (1993), Class A (1993), Class A (2001) plus an open case for Class B in Suffolk

Superior Court.  The defendant appears to be a long term drug
dealer.  Despite his completion of Project Turnabout, the
evidence in the present case indicates that within a year of
completing the program, while on release from another drug
charge, the defendant was back on the street selling crack
cocaine within 1000 feet of both a playground and a school.

While Ms. Herndon appears to be a responsible citizen and
well intentioned, this court believes that the defendant will
revert to his chronic pattern of drug dealing if he is released.
In addition this court notes that Ms. Herndon has two children,
ages 13 and 16.  This court would consider it an "accident
waiting to happen" to place the defendant, with his history of
drug dealing, drug use, gun possession and domestic violence, in
Ms. Herndon's household, despite the fact that he lived there
previously for two months.

The defendant did not proffer any credible evidence to
detract from the government's assertion that he has committed a
serious drug crime involving a narcotic drug and that he is a
danger to the community or any person.  This court finds by clear
and convincing evidence that there is no condition or combination
of conditions that will assure the safety of any person or the
community if the defendant is released.


B. <u>Risk of Flight</u>

18

Next, this court turns to risk of flight or failure to appear.

The defendant's record for appearing in court as required is abysmal.  His criminal history reflects over 20 defaults.  In addition it appears that the defendant has been living an itinerant lifestyle for most of his life, moving from one location to another while being supported by family members and girlfriends.

In addition the defendant has had a long standing, serious and expensive drug habit which, despite several rehabilitation attempts, has plagued him for over a decade.  Although the defendant contends that he was drug free for the two months prior to his arrest, this court is not convinced that he is any more likely to appear now than he has been in the past.  The history of a long term and persistent drug habit adds to his potential for unreliability.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of

conditions of release (set forth under 18 U.S.C.§ 3142(b) or (c)) will reasonably assure the safety of any other person or the community if the defendant is released.  In addition, this court has found, at least by a preponderance of the evidence, that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

(1)  The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)  The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3)  On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to any authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.

         /s/
_____
**MARIANNE B. BOWLER**
Chief United States Magistrate Judge

20